HENRY H. PIKE *vs.* CITY OF WALTHAM.

Middlesex.    March 3, 1897. — June 15, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Assignment — Action.*

If a contract for the construction of a bridge is entered into with a city, which has a bond with sureties for the due performance of the work, and if during the progress of the work the contractor assigns the contract without the consent of the city, and afterwards renounces all interest in it and refuses to go on with the work, the city has a right to decline to permit the assignee to continue the work.

CONTRACT, by Henry H. Pike, surviving partner of the firm of H. H. Pike and Son, for the benefit of Joshua Benshimol, to recover for work done and materials furnished in the construction of a bridge in the defendant city under a written contract. Trial in the Superior Court, without a jury, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff introduced in evidence the report of an auditor, to whom the case had been referred, and rested.

The auditor found and reported the following facts.

The written contract between the firm, then composed of Henry H. Pike and his son Henry E. Pike, and the defendant city was entered into on May 23, 1888, for the construction of a stone bridge at Prospect Street in Waltham by the Pikes, who were stone masons and contractors; and Joshua Benshimol and one Shea were their sureties thereon for the due performance of the work, which was to be completed by November 1 of that year, and for the price of $38,000.

With the contract were connected full printed and written specifications detailing the materials, quality, form, and mode of construction of the bridge, providing fully for the inspection and

superintendence of the work on behalf of the city by the city engineer, John F. Moore, and an inspector, one Barton, under the general control of the street commissioners of the city, and that payment should be made monthly of eighty-five per cent of the amount of work done, to be estimated by the city engineer, and the balance in thirty days after the completion of the contract to the satisfaction of the street commissioners. There was also a proviso that the city could determine the contract on the insolvency of the contractors or discontinuance of work by them for ten days after notice from the street commissioners, who could then on behalf of the city relet the work at the contractors' risk and expense.

Benshimol, beside being surety on the contract, was a creditor of the Pikes, and also had furnished all the money to carry on the work, but had no other relation to their contract or interest therein before October, 1888. On October 5, 1888, by an accident at the bridge, Henry E. Pike was killed and Henry H. Pike severely injured, so as to be incapacitated from attending to the work. These facts were at once known to the city and its officials as well as to Benshimol, but no claim was made by either party to the contract to terminate it on this account; on the contrary, Benshimol, by advice of his counsel, kept on with the work under it, the mayor of the city assenting; but the payments for what should be done were to be through Pike. One Connelly was employed by Benshimol to do the necessary stone work, with the knowledge and assent of the city engineer, and under the inspection of Barton; and one Fifield was, at the suggestion of Benshimol, employed to superintend the construction, but, proving unsatisfactory, was replaced by consent by Dexter Pratt, who continued to act until the work was suspended in January, 1889, as hereinafter stated. Monthly estimates were made by Moore, the city engineer, of the work done in October, November, and December, by the men employed by Benshimol, and were reported to the street commissioners and approved by them; and these amounts were paid to Benshimol and receipted for by him in the form " H. H. Pike & Son, by Joshua Benshimol." The estimate for the October work did not name by whom the work was done, while those for November and December described the work as done by H. H. Pike and Son.

On October 18, 1888, an assignment of the contract was exe-
cuted to Benshimol by Pike, as surviving partner of H. H. Pike
and Son, providing however that any profits beyond the reim-
bursement to Benshimol of his expenditures should belong to
Pike.   This was never recorded, nor in terms communicated
to the city or its officials.   On November 19, 1888, however,
another assignment was executed, transferring to Benshimol all
interest under the contract, and this assignment was duly re-
corded on February 4, 1889.   It also appeared that on December
10, 1888, Benshimol petitioned the board of aldermen of Wal-
tham for reimbursement for insufficient estimates for the two
preceding months by the city engineer, and, while he claimed
that he was no longer bound as surety, still referred to the Pikes
as contractors.   A hearing was had before the aldermen, but no
action was taken by them on the petition.   Early in January,
1889, an agreement was drawn up by the city solicitor and
signed by the mayor, providing for a suspension of the stone
work until March 15 following.   Pike had on January 4, 1889,
signed a similar agreement for suspension until April 8 follow-
ing ; but this extension had not been agreed to by the city.   On
January 9 and 22 of that year the street commissioners notified
Pike to attend to some filling, which was complied with by Ben-
shimol, with the knowledge and to the satisfaction of the city
engineer, who so certified on February 6.   After the recording
of the assignment of November 19, Benshimol, by his counsel, on
February 9, 1889, requested the assent of the city thereto, which
was refused by the mayor.   At the expiration of the agreed sus-
pension of work on March 15, the street commissioners addressed
to Pike a notice requiring him to resume the conduct of the work.
Pike did not comply with this, on the ground that he had no fur-
ther interest in the contract ; and Benshimol, who was informed
of it at the time, denied the right of the city to treat or proceed
with Pike, insisted on his own right to proceed independently of
the latter, and to complete the work by any competent con-
structor, and, having made an arrangement with J. H. Leavitt
to that effect, proposed him as such to the street commissioners.
This proposal was rejected by the street commissioners.   Ben-
shimol then attempted to resume work with the same employees
as he had had before the suspension, and was compelled by the

city to desist, and the street commissioners thereupon offered the contract at Pike's risk, in pursuance of the provision in the contract above referred to, to Leavitt, and on April 17, 1889, contracted with him to finish the bridge for the sum of $21,865, which he did, and was paid that amount. It was admitted by the city that it had on hand over and above this payment to Leavitt, and $16,032.40, which was the amount paid to the Pikes or to Benshimol, the sum of $2,008.60, the balance of the contract price ; but it did not admit Benshimol's title thereto.

The testimony fully established the knowledge by the city through all its officials, mayor, aldermen, street commissioners, and engineer, that after the accident to the Pikes the work was continued at the expense of Benshimol, and by the skilled workmen and superintendent in his employ ; that there was no fraud or invalidity in the assignment to prevent its transferring the right to all moneys due under the contract for work done, and not lawfully paid out in pursuance thereof ; and that there was also no question that the present suit was authorized by Pike.

But the amount sought to be recovered by Benshimol was not limited to the balance of $2,008.60. He contended that by the assignment he was entitled to the contract itself thereafter ; that this was ratified and confirmed by the recognition of him by the city, especially by its acceptance of the work done by him during October, November, and December, 1888 ; that therefore the city had no right, as already mentioned, to treat with Pike, or insist on Pike's personal completion of the work in March, 1889, or to treat the latter's non-compliance as a breach ; that the employment of Leavitt by the city was unauthorized ; and that he, Benshimol, was not bound by the amount paid to Leavitt, but was entitled to recover in this action all that he or Pike had paid out under the contract, namely, $24,700.77, less only what they, or either of them, had received from the city, to wit, the sum of $16,032.40.

" It seemed clear upon the evidence, that, though the continuation of the work went on in the name of Pike and under the terms of the original contract, there was no understanding or expectation that he should resume its conduct personally, or that the skilled superintendence and labor given to it by Benshimol's employees should not continue to the end. These did in fact con-

tinue for upwards of three months, during which time whatever was incurred and paid for the work, including the amount now sought to be recovered, was paid by Benshimol, and it was only after the two months' suspension by agreement that the street commissioners insisted on Pike's personal resumption. I report, therefore, subject to the ruling of the court thereon, that the city could not treat a continuation of the performance of the contract by Benshimol and his employees in the same manner as had already been approved of by it for the three months to January, 1889, as a breach entitling it to take the contract from Pike and Benshimol and employ Leavitt to finish the work at the plaintiff's expense.

" While, therefore, it did not appear but that if the contract had been fully performed by Benshimol, as he claimed the right to perform it, either through Leavitt or any one else, it might have cost him as much as Leavitt was paid by the city, yet the burden of proof appeared to be upon the defendant to establish this as a fact ; and it could not, after terminating the contract without any breach on the plaintiff's part and depriving him of the opportunity of completing the work, charge him with what it expended for that purpose, without showing that he could not have done the work at less expense in the manner required by the specification. This it produced no evidence to show."

After deducting certain items, aggregating $445.87, the auditor found that the plaintiff was entitled to recover the sum of $8,222.50.

The defendant called as witnesses Henry N. Fisher, who was mayor of the defendant city during the entire period in which the bridge was being constructed, and also John F. Moore, who was the city engineer and in supervision of the work of construction under and by direction of the street commissioners of the city, who testified that on the tenth day after the service of the notice of March 15, 1889, to resume work, to wit, on March 25, 1889, Pike, in company with Moore, called on the mayor and asked for an advance of money, and stated that without it he could not proceed with the work, and such advance was refused, and Pike said he should not go on with the construction.

The above witnesses admitted that they testified substantially to the same facts before the auditor.

In rebuttal, the plaintiff produced the man who was in charge of the work when the city compelled a suspension of it, and who was acting by direction of Benshimol, and so stated to the inspector; and he testified that he was on March 25, 1889, performing work required by the contract, when the inspector of the street commissioners ordered him to desist, whereupon, at his request, the inspector signed a memorandum stating the above facts. The plaintiff also introduced the auditor, who produced his notes of the testimony given by Henry H. Pike, now deceased, and testified that Pike before him testified that no work on the bridge was personally authorized by Pike after March 15, 1889, and that none was done except on March 25, 1889, which was being done under Benshimol's direction when ordered by the inspector to desist.

The defendant requested the judge to give the following rulings:

" 1. If Pike, between March 15 and March 25 inclusive, did not do or authorize any work on the bridge, and Benshimol during that time performed work on the bridge, while claiming that he had a right to do so independently of Pike, and while denying the defendant's right to treat with Pike, such work was not the work of Pike or his agents and would not interfere with the right of the defendant to enter upon the work.

" 2. If Benshimol worked on the bridge between March 15 and March 25, while claiming that he had a right to do so as the assignee of Pike, and while claiming that the defendant had no right to treat with Pike, and when Pike did not authorize any work, such work cannot now be availed of by Pike, on the ground that Pike and Benshimol acted upon a mistaken belief that the assignment to Benshimol and the conduct of the defendant as matter of law substituted Benshimol for Pike.

" 3. If Pike failed to resume work within the ten days' notice given him under the contract, then the plaintiff is entitled to recover only such sum of money as is found due the plaintiff by the auditor, namely, the sum of $2,008.60, as a balance coming to him after the completion of the contract by the city.

" 4. If Pike on March 25 gave the city notice that he did not intend to resume the construction of the bridge, either by himself or his agents, and did not resume, then the city, acting

under the contract, had the right to sublet the contract and charge the same to Pike."

The judge found the facts to be true, as stated by the auditor and witnesses; refused all of the requests for rulings; and found for the plaintiff in the sum of $8,222.50. The defendant alleged exceptions.

The case was argued at the bar in March, 1897, and afterwards was submitted on briefs to all the justices.

*C. F. French,* for the defendant.

*M. M. Johnson,* (*B. B. Johnson* with him,) for the plaintiff.

FIELD, C. J. The contract could not be assigned without the consent of the city, so as to substitute the assignee as a party to the contract in place of the Pikes. The city had a bond given by the Pikes, with sureties, and had a right to hold the Pikes and their sureties on the bond responsible for the due performance of the work by the Pikes. The Pikes could have performed the contract by means of agents, and, if Benshimol had continued to act as agent for the Pikes and had completed the contract as such agent, the contract would have been properly performed. But when Pike, the survivor of the two partners, assigned the contract to Benshimol, and renounced all interest in it, and when Benshimol offered to complete the contract, not as agent for the Pikes, but in his own behalf as assignee, the city had the right to refuse to permit Benshimol to go on with the work. If the city had assented to this, it would have released the Pikes from responsibility for any failure to complete the contract, would have lost the benefit of the bond, and would have relied wholly upon the responsibility of Benshimol for any subsequent breach of the contract. When Pike, the survivor, renounced all interest in the contract, and refused to go on with the work, he broke the contract, and the fact that Benshimol, on his own account as assignee, offered to complete the contract, is not equivalent to an offer to perform it by Pike. In the opinion of the majority of the court, the exceptions must be sustained.

*So ordered.*