### SPRANKLE *v.* TRULOVE ET AL.

[No. 2,875. Filed June 29, 1899.]

FRAUDS, STATUTE OF.—*Contracts.—Sales.*—Plaintiff brought suit to recover for certain machinery alleged to have been sold by him to defendants at a price exceeding $50. The complaint was based upon a written proposal executed by defendants to a third person. *Held,* that the complaint was bad, as the proposal or contract of sale was within the statute of frauds (section 6635, Burns 1894), providing that no contract for the sale of goods for the price of $50 or more shall be valid unless the purchaser shall receive part of such property, or shall give something in earnest to bind the bargain or in part payment, or unless some note or memorandum in writing of the bargain be made and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized. *pp. 578-584.*

CONTRACTS.—*Sales.—Parol Evidence.—Frauds, Statute Of.*—A written contract of sale must set forth the terms of the sale with reasonable certainty, and the failure of the writing to do this in any respect cannot be supplied by parol proof. *pp. 584-587.*

FRAUDS, STATUTE OF.—*Contracts.—Sales.—Acceptance of Goods.— Complaint.*—Averments in a complaint for the purchase price of machinery, that the purchasers inspected the machinery upon its arrival, and said they would accept it if the seller would procure a new axle for the truck, which was done, and defendants then assisted in setting up the machinery, and plaintiff turned same over to them in substantial compliance with his contract, but defendants refused to accept the same, do not show such an accept-

ance of the property purchased as contemplated by the statute of frauds to take a contract which is void by the statute of frauds out of the statute. *pp. 587, 588.*

FRAUDS, STATUTE OF.—*Contracts.—Sales.—Acceptance.*—When the person to whom a written proposal to purchase machinery was made transferred same to a third person and sold him the machinery, such action does not amount to such an acceptance of the proposal as to constitute a valid contract between the parties. *pp. 588-592.*

CONTRACTS.—*Sales.—Executory Contracts.—Assignment.*—A written proposal to purchase machinery conditioned that the machinery was to be delivered to the purchasers, and warranted, and if it could not be made to fill the warranty it was to be returned, and another machine substituted, is not assignable. *p. 592.*

From the Noble Circuit Court.    *Affirmed.*

*R. P. Barr* and *L. W. Welker,* for appellant.

*Luke H. Wrigley* and *T. A. Redmond,* for appellees.

BLACK, J.—The complaint of the appellant against the appellees, Thomas Trulove, Henry Trulove, and the Keystone Manufacturing Company, contained four paragraphs, and demurrers of each of the appellees, Trulove and Trulove, to each paragraph for want of sufficient facts were sustained. In the first paragraph it was alleged, in substance, that the appellant was engaged in the business of selling numerous articles,—among them farm machinery, in the city of Kendallville, Noble county, Indiana, under the name of the Sprankle Hardware Company; that he also sold machinery for the appellee, the Keystone Manufacturing Company; that on the 16th of September, 1896, he sold the other appellees a combination corn-husker and fodder-shredder, or cutter, at and for the price of $400, and on that day the appellees Trulove and Trulove entered into a written contract with the appellant for the purchase thereof; that said contract was made by the appellees Trulove and Trulove *to* the appellant in the name of the Keystone Manufacturing Company; that at the time it was the mutual understanding by and between the appellant and the appellees Trulove and Trulove that the appellant was to furnish and deliver to said

Sprankle *v.* Trulove.

Trulove and Trulove a combination corn-husker and fodder-shredder manufactured by said company, as set out and described in said written contract, a copy of which was made an exhibit; that, to carry out his part of the contract, the appellant caused said company to ship to Kendallville a number one Keystone corn-husker with fodder-shredder, in all respects as set out in said contract; that, upon the arrival of said machinery at Kendallville, appellant notified said purchasers that it had arrived, and that he was ready to deliver it to them; that the appellees Trulove and Trulove came to Kendallville and inspected the machinery, and said they would accept it, upon condition that appellant would procure as soon as possible from said company a new axle for the truck of said machine; that appellant immediately procured said axle as so requested, and notified the appellees Trulove and Trulove of its arrival, and that they could come and get the machinery; that thereupon, they came and assisted in setting up said machinery at the warerooms of the railroad company at Kendallville, and the appellant turned the same over to them in all things in substantial compliance with said written contract; and they then refused to take and accept said machinery, and left it in said warehouse; that, by the terms of said contract, the appellees Trulove and Trulove were to pay the freight on said machinery from Sterling, Ill., to Kendallville, and to pay $200 January 1, 1897, and $200 January 1, 1898, with interest; and it was further agreed that in case default should be made in payment of the first installment, then all said installments should at once become due; that said Trulove and Trulove had failed to pay said freight upon the arrival of the machinery as it became due, and said installment of $200 due January 1, 1897; that by reason of these defaults the whole contract price became and was due; that appellant had substantially complied in all respects with his part of said contract by turning over to said Trulove and Trulove on the —— day of October, 1896, said machinery at Kendallville;

that the freight on said machinery from Sterling to Kendallville was $14.25, which appellant was compelled to and did pay; that said sum of $400, with interest from the —— of October, 1896, was due and unpaid; and that said company had no interest in said contract, as the appellant paid it in cash for said machinery, and was to have the benefit of said contract so executed in the name of said company, which was, in truth and in fact, "a contract to" the appellant, who was to furnish, and did furnish, said machinery to the appellees Trulove and Trulove.

The second paragraph alleged, that the appellant procured and purchased from said company a machine as described in the written contract, and had it shipped to Kendallville, and notified said Trulove and Trulove of its arrival and of his willingness to deliver it to them; that at their instance and request he assisted them in setting up the machine in the freight-house at Kendallville, they having informed him that they had come to Kendallville for it; that he tendered and turned over the machine to them in all respects as he had agreed to do, but that they refused without cause to take and accept it as they had agreed to do, and failed and refused to pay, etc.; that the machine was and had been at the freight-house for the appellees Trulove and Trulove since the day appellant assisted in setting up the same for them; and that the appellant had been damaged by their refusal to accept the machine, and to comply with their part of the contract, in the sum of, etc. Otherwise this paragraph was substantially like the first.

In the third paragraph it was alleged, that the appellees Trulove and Trulove purchased the machine of said Keystone Company, and entered into a written contract for the purchase thereof, being the same writing mentioned in the former paragraphs; that, after its execution, said company sold, assigned, and delivered the contract to the appellant, by delivering it to him and authorizing him to fill the conditions thereof on its part, and giving him all the rights and benefits

it had therein; and the appellant proceeded to carry out the conditions of the contract on his part, and caused said company to ship to Kendallville a machine as provided in the contract. It was also alleged, that, after the arrival of the new axle, the appellant, at the warerooms of the railroad company in Kendallville, turned the machine over to the Truloves, as required by the contract, and informed them that it was their property, and left it in their possession, but they then refused to take and accept it, and left it in said warerooms, where it still remained; that said contract was, on the 16th of September, 1896, signed by said Trulove and Trulove, and was accepted and acted upon by said company and by the appellant, by said company's assigning and transferring it to the appellant, and furnishing him with said machine to be delivered and turned over to said Trulove and Trulove in compliance with the contract; and that the contract price was due, etc. Otherwise this paragraph was like the first.

In the fourth paragraph it was alleged, that the appellees Trulove and Trulove on, etc., "entered into a written contract for the purchase from" the Keystone Company of the machine, a copy of which "contract" was made an exhibit, being the written order of the Truloves mentioned in the other paragraphs; that "said contract" was signed by the Truloves "and accepted and acted upon by" the Keystone Company; that, by its terms, the Keystone Company was to ship the machine, etc., setting forth the provisions of the written proposal; that "after the execution of said contract" the Keystone Company "assigned and transferred all of its right and interest therein to this plaintiff by delivering the same to him;" that he procured the machine from the Keystone Company, and caused it to be shipped to Kendallville. It was alleged, that the appellant fully performed his part of said contract, what he had done being stated substantially as in the other paragraphs; that the defendants wrongfully and without cause refused to accept the machine, etc.; that, by

reason of the refusal of the Truloves to accept the machine, and to comply with the contract, the appellant was damaged in a sum stated. It was alleged that the Keystone Company was made a defendant to answer as to any interest it might claim.

The exhibit filed with each of these paragraphs was a written order dated at Kendallville, September 16, 1896, signed by the appellees Thomas and Henry Trulove, their post-office being indicated as Ripley, Noble county, Indiana, addressed and proceeding as follows: "Keystone Mfg. Co., Sterling, Illinois. Gentlemen: Please deliver on cars at Sterling, Ill., to be shipped to me at Kendallville, in care of Sprankle Hdw. Co., one No. 1 Keystone corn-husker with fodder-shredder," etc., the machine being described, and a warranty thereof being set forth. It was stipulated that, if the machine would not bear the warranty after a trial of two days, immediate written notice should be "given the Keystone Manufacturing Company by registered letter, or to the agent of whom purchased," etc., and a reasonable time should be given "the Keystone Manufacturing Company, or dealer of whom said machine was purchased, to send a competent person to remedy the difficulty," etc.; that, if the machine could not be made to fill the warranty, it was to be returned by the purchaser to the place where received, and another was to be substituted, etc.; that continued use of the machine should be evidence of the fulfilment of the warranty, "and the purchaser agrees thereafter to make no claim on the Keystone Manufacturing Company." The purchaser agreed to receive the machine on arrival at Kendallville station, and to pay the freight; also to pay for the machine, as recited in the complaint. It was stipulated that, if default should be made in the first payment, all payments should at once become due; that notes should be given for deferred payments when required; that "no verbal statements or agreements will be recognized in connection with this contract;" and it was provided, that "when notes are given in accordance with the

terms of payment of this contract, and sent to the party of the first part, 'they shall be considered in lieu of the deferred payments specified in this contract."

It seems to have been the purpose of the pleader to proceed in the first and third paragraphs of the complaint for the recovery of the contract price, treating the contract of sale as executed, and in the second and fourth for the recovery of damages for breach of an executory contract of sale by refusal to accept and pay for the machine. It is suggested in argument that the contract of sale in question was within the seventh section of our statute of frauds (section 6635 Burns 1894, section 4910 Horner 1897), providing: "No contract for the sale of any goods, for the price of fifty dollars or more, shall be valid, unless the purchaser shall receive part of such property, or shall give something in earnest to bind the bargain or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

In the first paragraph it is alleged that the appellant was in business under the name of the Sprankle Hardware Company, and also sold machinery for the Keystone Company, but no agency of any party is averred in connection with the transaction involved in suit, in any paragraph of complaint. It is alleged in the first and second paragraphs, in effect, that the appellees Trulove and Trulove made the contract with the appellant himself for the purchase of the machine, and that this contract was made by said purchasers with the appellant in the name of the Keystone Company; and throughout the complaint, and in the writing exhibited, it is shown that the name of the Keystone Company was not a name of the appellant, and that its name was not used or intended to indicate the appellant, but by that name it was meant by the appellant in his complaint, and by said purchasers in the writing exhibited, to indicate the manufacturing company located in the state of Illinois, which the appellant did not

represent, and which did not represent the appellant, in the contract of sale. The written instrument set forth as said contract was an offer or proposition to purchase, signed by the makers thereof, and addressed to the Keystone Company as the party to which the proposal was made, which, by acceptance thereof, might become the seller. This proposition is set up as one which, by the understanding of the makers thereof and the appellant, was to be acted upon and was acted upon by the appellant; and it was sought in the first paragraph to recover the price stipulated in the writing as upon an executed contract, and in the second paragraph to recover the same amount as damages for breach of the contract.

The essential terms of the sale must be ascertainable with reasonable certainty from the writing itself, or by some other writing referred to therein, and failure of the writing to do this in any respect cannot be supplied by parol proof. Parol evidence cannot be resorted to for the purpose of supplying anything which it lacks to make it a written agreement containing the essential terms of a sale. *Norris* v. *Blair,* 39 Ind. 90, 10 Am. Rep. 135; *Baldwin* v. *Kerlin,* 46 Ind. 426; *Ridgway* v. *Ingram,* 50 Ind. 145, 19 Am. Rep. 706. It is necessary that the note or memorandum should show who are the parties to the contract, by their names, or some reference or description sufficient to identify them.

In Taylor on Ev. section 1153, it is said that if it is sought to charge with liability, or to give the benefit of the contract to an unnamed principal, such evidence will be received; and this, too, whether the statute of frauds does or does not require the agreement to be in writing; for in such cases the parol evidence would not have the effect of contradicting the written agreement, "since without denying the agreement to be binding on the party whom it purported to bind, it would show that another party, namely, the principal, was also bound, on the well known doctrine that the act of an authorized agent is, in law, the act of the principal."

In *Grafton* v. *Cummings*, 99 U. S. 100, it was said to be an essential element of a contract, in writing, that it shall contain within itself a description of the thing sold, by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it; and that the "name of that vendor, or some designation of him which could be, recognized without parol proof extraneous to the instrument, was an essential part of that instrument to its validity."

In *Allison* v. *Rutledge*, 13 Tenn. (5 Yer.) 193, Rutledge, defendant, addressed a written undertaking for the debt of Cooper to John Allison. It was held that this paper could not be given in evidence to sustain a joint action brought by John and Joseph Allison. It was said: "The contract can not be varied, or its meaning explained, without violating the statute of frauds.  *  *  *  The paper from its face could not be given in evidence to sustain the joint action, and it could not be proved by parol that two were meant."

In *Grant* v. *Naylor*, 4 Cranch (U. S.) 224, it was held that a letter of credit addressed, by mistake, to John and *Joseph*, and delivered to John and *Jeremiah*, would not support an action by John and Jeremiah for goods furnished by them to the bearer upon the faith of the letter. The declaration in assumpsit alleged the agreement between the plaintiffs and defendant, and the promise of the defendant to pay the plaintiffs. The court, per Marshall, C. J., said: "That the letter was really designed for John and Jeremiah Naylor cannot be doubted, but the principles which require that a promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony originate in a general and wise policy, which this court cannot relax," etc. See *King* v. *Batterson*, 13 R. I. 117.

In *Sherburne* v. *Shaw*, 1 N. H. 157, it was said, that "the written evidence then, which hath been offered to prove the contract declared on, as it fails to give any intimation that

plaintiffs were one of the parties to that contract, must in itself be considered radically defective and inadequate." See *Ennis* v. *Waller,* 3 Blackf. 472, 476; *Barickman* v. *Kuykendall,* 6 Blackf. 21. The memorandum must show with reasonable certainty who were the parties to the contract, and the terms of the sale, "so that they may appear from the writing itself." *Coddington* v. *Goddard,* 16 Gray (Mass.), 436, 443.

In *Nichols* v. *Johnson,* 10 Conn. 192, the name of Nichols, the plaintiff, did not appear in the memorandum as the owner of the property or vendor, but the property was there said to be in Philo Baldwin. It was held that the memorandum did not disclose the name of the vendor, "at least it cannot be inferred by any reasonable latitude of construction that James Nichols was the vendor of the estate sold," who sued as such, alleging the promise of the defendant to buy of said plaintiff. The memorandum was held insufficient to take the case out of the statute.

In *Lee* v. *Hills,* 66 Ind. 474, the memorandum of the sale of goods was signed by the seller, and it contained the name of the buyer, but by reason of the omission of the word "sold" before the name of the buyer, it was not shown on the face of the writing which was the buyer and which the seller. It was held that this was not a sufficient note or memorandum within the requirements of the statute of frauds, and that parol evidence was inadmissible to supply the omitted word.

In *Board, etc.,* v. *Shipley,* 77 Ind. 553, it was said that a contract cannot be in writing within the meaning of the provision of the statute of limitations so as to run twenty years, unless the parties, as well as its entire terms and stipulations, can be gathered from the instrument itself, or from some other written instrument referred to therein, "without the aid of parol evidence to ascertain either;" that if parol evidence has to be resorted to in order to ascertain the parties to a contract, or its terms, the reason for extending the period of limitation to twenty years fails.

Sprankle *v.* Trulove.

In *McKinney* v. *Harter*, 7 Blackf. 385, 43 Am. Dec. 96, which was assumpsit brought by Joseph Harter, the declaration alleged that the defendant, McKinney, made his promissory note, commonly called a due bill, by which he acknowledged himself indebted to the plaintiff by the name and description of "The estate of Thos. Eagle, deceased," the plaintiff being administrator of that estate, etc., and delivered the same to the plaintiff. It was said by the court that the plaintiff could not recover without other evidence besides the due bill; that it was necessary for him to prove that by the words in the due bill, "The estate of Thos. Eagle, deceased," the plaintiff was the party intended.

In *Champion* v. *Plummer*, 1 Bos. & P. N. R. 252, it was said: "How can that be said to be a contract, or memorandum of a contract, which does not state who are the contracting parties? By this note, it does not at all appear to whom the goods were sold. It would prove a sale to any other person as well as to the plaintiff."

In the case at bar, it does not appear from the writing that the goods were ordered from the plaintiff, but the writing is produced to prove a sale by the plaintiff. It would, in itself, without aid from parol evidence, prove a sale by any other person as well as by the plaintiff. The writing exhibited was not a sufficient note or memorandum, under the statute, of a contract of sale between the signers thereof and the appellant, because he was not named or indicated in it as a party to the contract. The oral negotiations and agreements stated as having occurred subsequent to the arrival of the machine at Kendallville could not be considered as themselves constituting a valid contract for the sale of goods for such price as brought the contract within the statute of frauds; and if such subsequent matters can be considered as a modification or addition to a previous written contract, the changed contract, if originally sufficient, would be invalid, being partly written and partly verbal, and therefore requiring parol evidence for the proof thereof, which the statute will not permit (*Car-*

*penter* v. *Galloway,* 73 Ind. 418); and if the previous written contract was not sufficient, it is plain that it could not be aided by the subsequent verbal agreement.

The statute of frauds is satisfied by the receipt of the goods by the purchaser. None of the paragraphs of the complaint show such a receiving of the goods by the buyers as contemplated by the statute. Our authorities are to the effect that where the contract of sale is not otherwise taken out of the statute of frauds, as by a sufficient written memorandum, or the giving of something in earnest or in part payment, the receipt of the goods, or a part thereof, contemplated by the statute as sufficient to transfer the title from the seller to the buyer, is not sufficiently shown by proof of delivery by the seller; but there must be unequivocal proof of an acceptance and receipt by the buyer, or by his agent authorized for such purpose. The receipt of property contemplated by the statute, which will take a contract of sale out of the operation of the statute, involves delivery by the seller, but the seller cannot by his act of delivery render the contract enforceable against the purchaser without the receiving of the goods, or some part thereof, by the purchaser, as his property under the contract. "The seller must part with his control with the purpose of vesting the right of property in the buyer, who must receive with such intent on his part." *Dehority* v. *Paxson,* 97 Ind. 253. In *Hausman* v. *Nye,* 62 Ind. 485, there was a question as to whether or not there was such a reception of the goods, or a part thereof, by the purchaser as is contemplated by the statute; and it was held that a delivery by the seller to a carrier not named by the buyer was not such a receiving by the buyer as to pass the title to the goods. It was suggested that in the case of a contract, itself valid, such a delivery might be sufficient to transfer the title and risk to the purchaser. In *Keiwert* v. *Meyer,* 62 Ind. 587, it was held that delivery by the seller to a common carrier designated by the buyer to carry and deliver to the buyer might have constituted an acceptance of the goods and

an execution of the contract of sale, if the contract of sale had not been void by the statute of frauds; but that such a delivery does not operate to take a contract which is void by the statute of frauds out of the statute.    See *Galbraith* v. *Holmes*, 15 Ind. App. 34.

The third and fourth paragraphs averred that the written proposal was made, as it showed upon its face, to the Keystone Company, and that it assigned the contract to' the appellant by delivering the written proposal to him, and authorizing him to fill the conditions thereof on the part of that company, and giving him its rights and benefits therein, and that he proceeded to carry out said conditions, etc. ˄ No act of acceptance of the proposal was shown, but it was assumed by the pleader in the third paragraph from the act of the company in assigning and transferring the written proposal to the appellant and furnishing him with the machine. In effect, it was shown in the third paragraph that the company, instead of entering into a contract, turned over the proposal to the appellant, and he offered and undertook to become the creditor of Trulove and Trulove by furnishing the machine which it had been proposed should be furnished and warranted to them by the Keystone Company, and, for some reason not disclosed, they declined to accept his offered and voluntary performance.    The assent which will constitute a valid contract of sale must be mutual and intended to bind both parties to the terms of the contract.    To make the terms of a mere proposal the terms of a valid contract, it must be accepted unconditionally.    And a mere mental assent is not enough; the assent must be communicated, or there must be subsequent action from which assent may be inferred. Such subsequent action, of course, must be the doing of some act by the party required to do it, in fulfilment of the stipulations of the proposal; and turning over the order to a third person, instead of constituting an assent, amounts to a rejection.

In the fourth paragraph it is alleged that the Truloves

entered into a written contract for the purchase of the machine from the Keystone Company; that the contract was signed by the Truloves and accepted and acted upon by the Keystone Company. What is thus called a contract appears to have been the written proposal, and it is clearly shown that it was not acted upon by the Keystone Company; but it is alleged that, after the execution of the contract, the Keystone Company assigned and transferred all its rights and interest therein to the appellant, by delivering it to him, and that said company has no interest in or to the contract. What is thus said of the execution of the contract is said merely by way of recital. It will be observed that it is not alleged in the fourth, or any other paragraph, that the Keystone Company gave any notice to the Truloves of the acceptance of their proposition, and it appears from the facts stated that it did not act upon it. If it be granted that this paragraph need not be construed as showing only a mere mental acceptance, but may be regarded as showing the making of a contract between the Keystone Company and the signers of the offer to purchase, then the important question would be presented as to whether it was such a contract as might be assigned. The written proposal did not provide by its terms for the assignment of the contract. "Rights arising out of a contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." Pollock Cont. p. 425 (4th Eng. 2nd Am. ed.), p. 454, (6th Eng. ed.) Where the defendant's estimate of the solvency and pecuniary credit and standing of the plaintiff's assignor may have constituted an important inducement to the contract, the assignment will not be upheld. *Lansden* v. *McCarthy*, 45 Mo. 106.

Where A. had contracted with B. for the furnishing of ice by the latter to the former, and B. assigned to C., who sued A. for ice furnished by C. after the assignment, it was said

that if the defendant had been informed of the change, and that B. could no longer perform its contract, the defendant could have declined to have it executed by the plaintiff. It was said that the implied assumpsit arises upon dealings between the parties to the action, and cannot arise upon dealings between the defendant and the original contractor to which the plaintiff was not a party. *Boston Ice Co.* v. *Potter,* 123 Mass. 28. In *Boykin* v. *Campbell,* 9 Mo. App. 495, it was held that an executory contract for the sale of 50,000 pounds of bacon deliverable at seller's option during a certain period, at a certain price per hundred pounds, the contract being subject to the rules of the Merchant's Exchange, under which either party might call for margins as the market price varied, was not assignable by the seller, being one which must be supposed to have been made with a view to the confidence reposed in each other by the parties, and the belief of each in the responsibility of the other, in his business qualities, and in his ability to perform the contract on his part. In *Humble* v. *Hunter,* 12 Q. B. 310, the declaration stated the instrument on which the claim was based as a certain charter-party of affreightment made between the plaintiff and the defendant. The instrument was executed not by the plaintiff but by a third person, who therein described himself as the owner of the ship. It was held that evidence was not admissible to show that such third person contracted merely as the plaintiff's agent. Lord Denman said: "You have a right to the benefit you contemplated from the character, credit and substance of the party with whom you contract." See *Winchester* v. *Howard,* 97 Mass. 303. In *Arkansas Smelting Co.* v. *Belden Co.,* 127 U. S. 379, 387, 8 Sup. Ct. 1308, it was said by the court: "At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipula-

tion, which manifests the intention of the parties that it shall not be assignable. But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." And the above remark of Lord Denman was quoted, and also the above extract from Pollock on Contracts, and it was said the defendant "could not be compelled to accept the liability of any other person or corporation as a substitute for the liability of those with whom" he had contracted. See *Delaware County* v. *Diebold Safe Co.*, 133 U. S. 473, 10 Sup Ct. 399; *Burck* v. *Taylor*, 152 U. S. 634, 14 Sup. Ct. 696; *Pike* v. *Waltham*, 168 Mass. 581, 47 N. E. 437.

The written proposal required of the Keystone Company the doing of certain acts before an indebtedness would be created. It was to deliver a described machine on cars at Sterling to be shipped to the signers at Kendallville, in care of the Sprankle Hardware Company. The sale was to be on credit, notes to be given when required. The Keystone Company was to warrant the machine as specified, and if, after trial, it would not fulfil the warranty, written notice was to be given to the company and a reasonable time was to be given it to send a competent person to remedy the difficulty; and if the machine could not be made to fill the warranty, it was to be returned, and another machine was to be substituted by the Keystone Company or the money and the notes given by the purchasers were to be returned to them.

Construing the pleading most strongly against the pleader, as we must do, we cannot admit that the fourth paragraph sufficiently showed the making of a contract between the Keystone Company and the Truloves. If in this we are too strict, yet we think that, by the written proposal, such obligations on the part of the Keystone Company and such a relation between it and the signers were contemplated, that the contract, still wholly executory, was not assignable. The judgment is affirmed.