PEOPLES OUTFITTING COMPANY *v.* WHEELING MATTRESS COMPANY.

[No. 9,487.   Filed February 26, 1918.]

1. FRAUDS, STATUTE OF.—*Construction.*—In determining whether a transaction is within the statute of frauds the courts will hold strictly to establish rules.   p. 22.

2. FRAUDS, STATUTE OF.—*Sale of Goods.—Identity of Property.— Parol Evidence.—Letters.*—A letter, "Ship us the $66.00 size, as per instructions to your" president, the order referring to comforters, was not sufficient to take the transaction out of statute of frauds, where the issue was as to the quality of goods, a matter which could not, in the absence of pertinent writings or a trade catalogue, be determined without resorting to oral evidence. p. 22.

From Marion Circuit Court (22,584); *Louis B. Ewbank,* Judge.

Action by Wheeling Mattress Company against the Peoples Outfitting Company.

From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Joseph B. Kealing* and *Martin M. Hugg,* for appellant.

*Roemler & Chamberlain,* for appellee.

DAUSMAN, J.—Appellee instituted this action against appellant before a justice of the peace. It is averred in the complaint that apppellant is indebted to appellee in the sum of $66 for goods, wares and merchandise sold and delivered. The following is the bill of particulars filed with the complaint: "1 doz. No. 529 Down Comforts, $66.00." No answer was filed. §1749 Burns 1914, §1358 R. S. 1881. The justice of the peace rendered judgment for appellee, from which an appeal was taken to the circuit court. Trial by the court resulted in a finding and judgment for appellee in the sum of $66, interest and costs.

The evidence shows the following facts: Mr. Leo Wolf is president of the Wheeling Mattress Company. In April, 1912, he called at appellant's store in Indianapolis and procured an order for goods. The order consisted of eight distinct items and the total price of the goods, as stated in the order, is $183.93. He transacted the business with Edward A. Kahn, treasurer of appellant company. Wolf made out the order in duplicate, and gave the carbon copy thereof to Kahn. The order was not signed by the buyer. The last item of the order is in the following words and figures: "1 Doz. No. 251 Comforts Down, 54.00." The goods were to be shipped September 1, 1912. Subsequently the following letters were written by appellant to appellee and duly received by the latter:

"Oct. 23, 1912.

"Mr. Leo Wolf,
    "Care Wheeling Mattress Co.,
        "Wheeling, W. Va.
    "Dear Sir:—Invoice dated September 17

received today ,and in sampling I noticed sizes do not run according to measurements sold. However, I presume this is the case with all comforts; but the point I want to bring to your notice is that you sold for our personal needs a bale No. 251 size 60 x 78 which is now enroute, and, judging from dimensions of goods received, this comfort would be hardly large enough for a single bed. If you remember correctly, I wanted to have a large size at the time and you thought this would suffice. I am writing you now to learn if I could not return this bale to you or your factory and instruct them to ship a size at least 72 x 84, and I believe the cost of these would be about $4.00 more than the price of your No. 251. Assuring you this matter to receive your immediate attention by placing order as desired will be greatly appreciated by me and we will return the one bale upon its receipt. Trusting to hear from you by return mail, we are,

"Respectfully yours,
"Peoples Outfitting Co.,
"E. A. K."

"Wheeling Mattress Co.,          "Oct. 31, 1912.
Wheeling, W. Va.

"Gentlemen:—Goods under invoice Oct 14th received. We are short one dozen No. 251, which evidently were not shipped as expense bill calls for seven bales, which we received. We will deduct from your invoice $54.00, and please instruct your mill to cancel this number and ship us the $66.00 size, as per instructions to your Mr. Wolf. This is of great importance to us.

"Respectfully yours,
"Peoples Outfitting Co.
"E. A. K."

"Wheeling Mattress Co.,          "Nov. 29, 1912.
"Wheeling, W. Va.

"Gentlemen:—Goods under invoice Nov. 11th received Tuesday and unpacked today. We

returned them today. We regret these also are not as sold. We purchased from you silk comforts and you shipped us sateen, which will not serve the purpose. Credit our account with same and send us freight amounting to $1.56.

"Respectfully yours,

"Peoples Outfitting Co.

"E. A. K."

These letters were not answered by appellee. The goods designated by the last item of the first order were never shipped to appellant. Acting on appellant's letter of October 31, appellee shipped to appellant some sateen comforts, which are the goods represented by the bill of particulars filed with the complaint. These goods were returned to appellee, whereupon they were put in storage. The comforts were made by a concern known as Palmer Bros. Company. Appellee issued no catalogue. The number on the memorandum of the first order and the number on the bill of particulars are the private numbers used by appellee in its dealings with the manufacturing company. Appellant knew nothing about the meaning of these numbers.

The only conflict in the evidence is with respect to the quality or identity of the goods alleged to have been sold and delivered. Mr. Kahn testified: "I asked him if he could furnish silk down comforts. He said he could. I told him the members of the firm wanted them for their personal use. He said that No. 251 covered that. I then ordered a dozen. I did not order sateen." Mr. Wolf testified: "Nothing was said about silk."

Is the transaction within the statute of frauds? §7469 Burns 1914, §4910 R. S. 1881.

When considered with reference to its origin and the evils it is intended to remedy, the beneficence of

the statute of frauds becomes apparent. It 1. tends to promote carefulness and exactness in commercial transactions. It removes the temptation to perjury. In the administration of justice it prevents the rights of litigants from resting wholly on the precarious foundation of memory. Like the statute of limitations, it operates in a sense as a statute of repose by avoiding strife and litigation. For these reasons the courts will hold strictly to the established rules. *Ridgway* v. *Ingram* (1875), 50 Ind. 145, 19 Am. Rep. 706; *Lee* v. *Hills* (1879), 66 Ind. 474; *Sprankle* v. *Trulove* (1899), 22 Ind. App. 577, 54 N. E. 461; *Hausman* v. *Nye* (1878), 62 Ind. 485, 30 Am. Rep. 199; *Porter* v. *Patterson* (1908), 42 Ind. App. 404, 85 N. E. 797; *Breckenridge* v. *Crocker* (1889), 78 Cal. 529, 21 Pac. 179; *Oakman* v. *Rogers* (1876), 120 Mass. 214.

The first order cannot be considered for any purpose. It is not signed by appellant. The letters do not refer to it in such manner as that it 2. may be construed as a part of them or of any one of them. It is not filed with the complaint as a bill of particulars. The merchandise designated by the bill of particulars constitutes no part of that order. The first seven items of that order were shipped to, and received and accepted by, appellant, and presumably payment therefor was promptly made. Then by the mutual assent of the parties, as evidenced by their conduct, the last item was canceled. That cleared the ground for a new transaction. Afterward appellee shipped different goods under a different number and for a different price. In making this shipment appellee must have relied upon appellant's letter of October 31. We assume that this is the basis of appellee's

NOVEMBER TERM, 1917.    23

Peoples Outfitting Co. *v.* Wheeling Mattress Co.—67 Ind. App. 18.

contention, for we have discovered no other foundation on which it can rest. The words of the letter, which constitute the order, are: "Please instruct your mill to    *   *   *    ship us the $66.00 size, as per instructions to your Mr. Wolf."

What were appellant's instructions to Mr. Wolf? Does the order refer to oral or written instructions? The letters contain no reference to each other, or to any catalogue, or to any record. One of the important elements, as in every sale of goods, is the identity of the subject-matter. In the case at bar that is the very thing in dispute, and must be determined, if at all, from the testimony of two witnesses who have nothing on which to rely but memory. The goods involved in the alleged sale are of such a character that the quality becomes a determining factor in identifying the subject-matter. Did appellant order goods made of muslin, denim, wool, sateen or silk? If, as appellee claims, nothing was said on this subject, why ship sateen? How can the essential elements of the alleged bargain be determined by a court? Manifestly there is no way other than by resorting to parol evidence, and that is the very thing prohibited. The writings signed by appellant are too vague and uncertain to enable us to discover from them alone what the terms of the contract are. Without violating the rules, we cannot ascertain the contract which the courts are asked to enforce. Indeed, we are in doubt whether there was a contract at all, since from the legitimate evidence it does not appear that the minds of the parties met and agreed to the same thing in the same sense. We are of the opinion that the case is within the statute, and that the finding is contrary to law. 20 Cyc 258; 1 Mechem, Sales §§426, 433, 443.

Appellee has not deemed it worth while to file a

brief, and the observations of the Supreme Court on such indifference are applicable here. *Walls* v. *State, ex rel.* (1895), 140 Ind. 16, 23, 38 N. E. 177; Ewbank's Manual §190.

The judgment is reversed, and the trial court is directed to sustain the motion for a new trial.

NOTE.—Reported in 118 N. E. 827. See under (2) 20 Cyc 270, 9 Am. Dec. 188.